### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>          Plaintiff,<br><br>          v.<br><br>BERNARD FINDLEY, et al.,<br>          Defendants. | No. 3:20-cv-397 (SRU) |

### PRETRIAL CONFERENCE MEMORANDUM AND ORDER

This action is proceeding to trial on the Plaintiff's ("SEC" or "the Commission") securities fraud claims against Defendants Bernard Findley ("Findley") and Halitron, Inc. ("Halitron"). A two-week jury trial is scheduled to commence on July 5, 2022.

On June 24, 2022, I held a pretrial conference ("the Conference") with the parties to address their respective motions *in limine* and other pretrial matters. This Memorandum and Order summarizes what I discussed with the parties and memorializes my rulings as announced on the record.

### I.     PRETRIAL MATTERS

At the start of the Conference, the parties and I discussed trial logistics, namely exhibits, witnesses and jurors. The vast majority of exhibits are uncontested. Nevertheless, I explained to the parties that only those exhibits shown to the jury at trial will be admitted into evidence. As for witnesses, there was no update to the witness list submitted on June 15, 2022—although, that might change with respect to my rulings on the motions *in limine*. Finally, I expressed that I am inclined to empanel a jury of eight and give each party four peremptory strikes in accordance with Rule 47 of the Civil Rules of Procedure and 28 U.S.C. §1870. Should the parties disagree

with the number of jurors, I indicated that I would accept argument on the issue before the jury selection date of June 30, 2022.

## II.    MOTIONS *IN LIMINE*

Next, I turned to the pending motions *in limine*. In advance of the Conference, seven motions *in limine*, and the corresponding objections, were filed: three from the SEC and four from the Defendants. For the reasons explained below and on the record at the Conference, the motions are decided as follows:

- (1) SEC's Motion *in Limine*, Doc. No. 73: DENIED
- (2) SEC's Motion *in Limine*, Doc. No. 74: DENIED IN PART, GRANTED IN PART
- (3) SEC's Motion *in Limine*, Doc. No. 75: GRANTED
- (4) Defendants' Motion *in Limine*, Doc. No. 82: DEFERRED
- (5) Defendants' Motion *in Limine*, Doc. No. 83: DENIED
- (6) Defendants' Motion *in Limine*, Doc. No. 84: DEFERRED
- (7) Defendants' Motion *in Limine*, Doc. No. 85: GRANTED

### (1) SEC's Motion *in Limine*, Doc. No. 73: Expert Carolyn Armbrust

The SEC moves to exclude the report and testimony of the Defendants' business appraisal expert, Carolyn Armbrust ("Armbrust"). Armbrust appraised the value of four assets owned by Halitron—referred to as brands. Those brands are: (1) Cinch Signs ("Cinch"); (2) Pieces in Places ("PIP"); (3) Archival Museum Supplies ("AMS"); and (4) Archival Photo Pages ("APP"). Oral argument was heard at the Conference, but I deferred issuing a ruling at that time. For the reasons set forth below, the SEC's motion is DENIED.

### A.  *Relevant Law*

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony, which provides in full:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based

2

on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

When considering expert testimony offered pursuant to Rule 702, the district court acts as a gatekeeper. *See Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993). This gatekeeping function "is tempered by the liberal thrust of the Federal Rules of Evidence and the 'presumption of admissibility.'" *Bunt v. Altec Indus., Inc.*, 962 F. Supp. 313, 317 (N.D.N.Y. 1997) (quoting *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995)). The Second Circuit has endorsed a "particularly broad standard for the admissibility of expert testimony," *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 75 (S.D.N.Y. 2001), wherein expert testimony should only be excluded if it is "speculative or conjectural," or if it is "based on assumptions that are so unrealistic and contradictory as to suggest bad faith." *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (cleaned up).

Proper exercise of this "gatekeeping function" entails consideration into three basic requirements: (1) qualifications, (2) reliability, and (3) relevance and assistance to the trier of fact. *See Nimely v. City of New York*, 414 F.3d 381, 396–97 (2d Cir. 2005).

*B. Discussion*

Before diving into the merits, I note several things. First, the issue before me is limited to only Armbrust's testimony; the Defendants do not intend to offer her report at trial. Accordingly, the SEC's request to exclude her report is DENIED as moot. Second, the SEC does not contest Armbrust's qualifications, nor does it contest the Uniform Standards of Professional Appraisal Practice (USPAP) methodology she employed. In essence, then, the crux of this motion is whether Armbrust's application of USPAP renders her testimony irrelevant or unreliable.

3

The SEC's first argument is one of relevancy. To get there, the SEC focuses on a singular press release, where the Defendants allegedly misrepresented the valuation of a business transaction between Halitron and another company. Because that transaction only involved AMS and APP, the SEC contends that the appraisals of Cinch and PIP are irrelevant. The problem with that argument, however, is that it narrowly construes the purpose of Armbrust's testimony. As the Defendants have argued, the Defendants intend to call Armbrust not to discuss a singular press release, but rather for the larger purpose of bolstering Halitron's overall business model. Interpreted that way, her testimony is clearly relevant to Findley's state of mind.

The reliability of Armbrust's testimony presents a closer call. Armbrust appraised the brands as of 2016, the time when Halitron first acquired them. As the SEC contends, that decision is curious given that the first alleged misstatement occurred a year later. Complicating the matter further, the SEC asserts that Armbrust improperly accepted and adopted the Defendants' financial projections in her analysis. Doing so, the SEC argues, only serves to bolster and regurgitate the Defendants' position. In response, the Defendants assert that the SEC's attacks are meritless and, at most, go to the weight, rather than the admissibility, of Armbrust's opinion. With some skepticism, I agree with the Defendants' position.

To begin, "USPAP constitutes the generally accepted professional appraisal industry standards." *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 2015 WL 353929, at *2 (S.D.N.Y. Jan. 28, 2015). The SEC concedes as much. The problem, therefore, lies in the inputs used by Armbrust. But challenges to an expert's application of an otherwise uncontested methodology go to the weight of the evidence. *See Metal Grp. USA LLC v. Seapack, Inc*, 2019 WL 11505384, at *5 (S.D. Fla. Nov. 22, 2019) (noting that, challenges to an expert's application of USPAP "go[] to the weight and not … the admissibility" of evidence); *Amorgianos v. Nat'l*

*R.R. Passenger Corp.*, 303 F.3d 256, 267–68 (2d Cir. 2002) ("[T]he district court's *Daubert* gatekeeping role does not permit the district court, in ruling on evidentiary sufficiency, to reject admissible expert testimony.).

Unlike the experts in the cases relied upon by the SEC, Armbrust can, and does, explain why she used the inputs she did. More specifically, Armbrust described at her deposition the ways in which she used Findley's projections as a starting point, but then adjusted the numbers based on her expertise. Surely, the parties can debate whether those inputs were the most appropriate, but that debate is not one for me to partake in at this stage. In assessing reliability, the district court is not charged with weighing the correctness of an expert's testimony. *See Travelers Prop. & Cas. Corp. v. Gen. Elec. Co.*, 150 F. Supp. 2d 360, 362 (D. Conn. 2001)). Instead, as *Daubert* instructs, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Taken together, I cannot conclude that exclusion is warranted under Rule 702 or *Daubert*. Accordingly, I deny the SEC's motion.

(2) SEC's Motion *in Limine*, Doc. No. 74: Prior Convictions and/or Conduct

The SEC moves to limit the scope and nature of cross-examination with respect to two of its witnesses, Launie McDaniel ("McDaniel") and Frank Brady ("Brady") at trial. For the reasons stated at Conference, that motion is DENIED IN PART, AND GRANTED IN PART. Namely, the Defendants may cross-examine McDaniel about: (1) her six New Mexico forgery convictions, in accordance with *United States v. Estrada*, 430 F.3d 606 (2d Cir. 2005), and Federal Rule of Evidence 609(b); and (2) her prior conduct of using false aliases and altering her fingerprints in accordance with Federal Rules of Evidence 608(b). All of McDaniel's other

convictions shall be excluded. As for Brady, the Defendants are precluded from introducing any extrinsic evidence about the Shalvoy Letter. Nor may the Defendants inquire about the Shalvoy Letter on cross-examination.

(3) SEC's Motion *in Limine*, Doc. No. 75: Irrelevant Evidence

The SEC moves to exclude any evidence or argument regarding the state of Halitron's business affairs post-dating April 2018. For the reasons stated on the record at the Conference, that motion is GRANTED.

(4) Defendants' Motion *in Limine*, Doc. No. 82: Unrelated Lawsuits, Judgments and Liens

The Defendants move to preclude any evidence or argument regarding the various lawsuits, judgments and liens against Findley. As discussed at the Conference, the relevance of this proposed evidence is contingent on what happens at trial. Therefore, I defer ruling on this motion.

(5) Defendants' Motion *in Limine*, Doc. No. 83: SEC Witness Larry Kozin

The Defendants move to preclude any testimony by SEC witness, Larry Kozin. For the reasons stated on the record at the Conference, that motion is DENIED.

(6) Defendants' Motion *in Limine*, Doc. No. 84: Investor Emails

The Defendants move to preclude the SEC from introducing portions of fourteen email chains sent by investors to Findley. As discussed on the record at the Conference, the parties shall meet and confer about this motion, keeping in mind my concerns about the volume of emails and the language in at least some of the emails. If the parties are unable to reach a resolution, they should contact Chambers, and I will issue a ruling on the motion.

(7) Defendants' Motion *in Limine*, Doc. No. 85: Prior Bad Acts

The Defendants move to preclude the SEC from offering testimony and evidence at trial that Findley allegedly engaged in an "unregistered stock scheme" and misappropriated corporate funds for his personal use. For the reasons stated on the record at the Conference, that motion is GRANTED.

### III.    REMAINING ORDERS

During oral argument, an issue emerged about the scope of the SEC's claims. To avoid any ambiguity, I ordered the SEC to produce to the Defendants a list of the statements it intends to prove at trial were misleading by the end of the day on June 24, 2022.

It is so ordered.

Dated at Bridgeport this 30th day of June 2022.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge